FILED

2022 Jan-26  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LYDIA GLOVER,                        )
                                     )
      Plaintiff,                   )
                                     )
v.                                   )      Case No. 4:20-cv-1622-GMB
                                     )
KILOLO KIJAKAZI,[1] Acting           )
Commissioner of Social Security,     )
                                     )
      Defendant.                   )

## MEMORANDUM OPINION

On September 11, 2017, Plaintiff Lydia Glover filed an application for a period of disability and disability insurance benefits ("DIB"). Her alleged disability onset date is July 17, 2017. Glover's application was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a video hearing on August 22, 2019 and denied Glover's claims on November 15, 2019. Glover requested a review of the ALJ's decision by the Appeals Council, which declined review on September 22, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of September 22, 2020.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Glover's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 12.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

---

[2] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Glover bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?

(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. RELEVANT FACTUAL BACKGROUND

Glover was born on September 1, 1964, so she was 52 years old on her alleged onset date and 54 years old on the date of the decision. R. 15, 26, 34, 264. Her primary complaints relate to a total knee replacement and complications from that surgery. R. 122–24. She also complains of seizures that began when she was 7 years old but became more severe and more frequent after her surgery. R. 122, 125–28. In her disability report, Glover alleges that she is unable to work because of total left knee replacement, high blood pressure, diabetes, seizures, arthritis, and carpal tunnel syndrome. R. 268.

Glover graduated high school, attended one year of college, and received

business office education through a vocational school. R. 117–18, 269.  She has past

work experience as a parts inspector, a quality control supervisor, and as a certified

nursing assistant in a nursing home. R. 33, 118–21, 134, 269.

The ALJ issued his decision on November 15, 2019. R. 34.  Under step one

of the five-step evaluation process, he found that Glover has not engaged in

substantial gainful activity since July 17, 2017, the alleged onset date. R. 27.  The

ALJ concluded that Glover suffers from the severe impairments of status post left

knee replacement and epilepsy.[3] R. 27–29.  The ALJ noted that these medically

determinable impairments cause significant limitations in her ability to perform

basic work activities. R. 29.  But the ALJ concluded at step three of the analysis that

none of Glover's impairments satisfied or medically equaled the severity of those

listed in the applicable regulations. R. 29.

Before proceeding to the fourth step, the ALJ determined that Glover had the

residual functional capacity ("RFC") to perform a limited range of light work. R. 29.

More specifically, the ALJ found that Glover had the following limitations with

respect to light work, as defined in 20 C.F.R. § 416.967(b):

> occasional climbing or ramps or stairs; no climbing of ladders, ropes or
> scaffolds; occasional balancing and stooping; no kneeling, crouching,
> or crawling; she must avoid concentrated exposure to extreme cold and
> vibrations; she should not be required to do any commercial driving;
> and she must avoid all hazards such as open flames, unprotected

---

[3] The ALJ found Glover's other alleged impairments to be non-severe. R. 27–29.  Glover does not
challenge these findings.

heights, large bodies of water and dangerous moving machinery.

R. 29.   At the fourth step, the ALJ considered Glover's age, education, work experience, and RFC in determining that she was capable of performing her past relevant work as a parts inspector. R. 33.  Therefore, the ALJ concluded that Glover has not been under a disability as defined by the Social Security Act from July 17, 2017 through the date of the decision. R. 34.  Based on these findings, the ALJ denied Glover's application for a period of disability and DIB. R. 41.

## IV.  DISCUSSION

Glover's brief states four[4] arguments in favor of remand: (1) the ALJ failed to accord proper weight to the opinions of Glover's treating physician, Dr. Xavier Smith, and her treating psychiatrist, Dr. Huma Khusro; (2) the ALJ erred in finding that Glover could perform her past relevant work; and (3) the Appeals Council erred in failing to review new evidence and applied the wrong standard; and (4) the denial is not supported by substantial evidence if the new evidence is considered. Doc. 6 at 20–30.  The court addresses each claim below.

## A.    Weight to Treating Physician Opinions

Glover argues that the ALJ failed to accord great weight to the opinion of her treating physician, Dr. Smith, and her treating psychiatrist, Dr. Khusro, without

---

[4] Although Glover's brief lists five arguments, the court combines arguments three and four because both relate to the evidence before the Appeals Council.

articulating good cause for doing so, as required by the Eleventh Circuit's treating physician rule. Doc. 6 at 20–24.  The Commissioner argues that Glover's reliance on the treating physician rule is misplaced because the Social Security Administration adopted new regulations governing how the Commissioner evaluates medical opinions for claims, like Glover's, that have been filed after March 27, 2017. Doc. 9 at 5–10.  In her reply brief, Glover concedes that she applied for SSI after March 27, 2012 and that the new regulations govern, but argues that the treating physician rule remains in effect. Doc. 10 at 2–7.  The court disagrees with Glover for the following reasons.

The Eleventh Circuit developed the treating physician rule "as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disab. Plan v. Nord*, 538 U.S. 822, 829 (2003). Under this rule, the Eleventh Circuit required an ALJ to articulate good cause for discounting the opinion of a treating physician. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The Social Security Administration then formalized the treating physician rule in 1991, implementing regulations that required ALJs to "give more weight to medical opinions" from treating sources and to "give good reasons . . . for the weight . . . give[n] [a] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

The new regulations eliminate the hierarchy of medical opinions and the

treating physician rule. 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). The Commissioner has "full power and authority to make rules and regulations" related to the proof and evidence needed to establish a right to benefits under the Social Security Act. 42 U.S.C. § 405(a). And "[a] court's prior judicial construction of a statute trumps an agency construction . . . only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Here, the Social Security Act requires the Commissioner to "make every effort to obtain from [an] individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(5)(B) & 1382c(H)(i). But it does not specify how the ALJ should evaluate treating source evidence. And Glover has not directed the court to any decision in which the Eleventh Circuit has held that the Social Security Act mandated the treating physician rule. Nor has Glover asserted that the 2017 regulations are arbitrary, capricious, or otherwise invalid. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984) (holding that courts must defer to validly adopted regulations). Therefore, the court will apply the 2017 regulations—not the treating physician rule—to the ALJ's evaluation of the

opinion evidence in this case.

Under the new regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). The ALJ may, but need not, explain how she considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2). With these new regulations as the guide, the court turns to the ALJ's treatment of Dr. Smith's and Dr. Khusro's opinions.[5]

### 1.     *Dr. Xavier Smith*

Glover first points to the physical capacities form Dr. Smith completed on August 1, 2019. R. 1463. The form is a one-page, pre-printed document prompting the physician to circle responses, fill in a blank, or check answers to nine general

---

[5] Glover's Supplemental Authority in Support of Disability (Doc. 13) does not change the court's analysis. Glover's authority is factually distinguishable and does not undercut the ALJ's findings of fact relating to Dr. Smith's and Dr. Khusro's opinions.

questions. R. 1463.  When asked how long Glover could sit upright in a standard chair at one time, Dr. Smith circled "< 15 minutes," and for how long she could stand at one time, he circled "< 30 minutes." R. 1463.  In answering the question, "In an 8 hour daytime period, how much time would you expect Ms. Glover to be lying down, sleeping, or sitting with legs propped at waist level or above, due to her medical condition," Dr. Smith circled both four and five hours. R. 1463.  He opined that Glover would be off-task 50% of an eight-hour day and would miss 15 days of work in a 30-day period due to her physical symptoms. R. 1463.  He checked "yes" when asked whether her limitations existed back to July 17, 2017. R. 1463.  When asked how much weight Glover could lift, Dr. Smith indicated she could occasionally lift up to five pounds, but never anything between six and 100 pounds. R. 1463.  He stated that "musculoskeletal pain, arthritis, bone spurs in neck, [history of left] knee replacement, [and] menopause" caused these limitations. R. 1463.  Finally, Dr. Smith listed the side effects of Glover's medications as "drowsiness, blurred vision, tremor, weakness, cough, flushing, lightheadedness, [and] headache." R. 1463.

Substantial evidence supports the ALJ's decision to find Dr. Smith's opinion less persuasive, and the court finds that the ALJ properly evaluated his opinion under the new regulations. R. 32.  First, the physical capacities form provides no substantive explanation for any opinions.  Instead, Dr. Smith checked boxes, circled responses, or filled in blanks without explaining his answers. R. 1463.  Opinions of

this type are conclusory and have limited probative value.  Indeed, several courts have criticized "form reports" like these, where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (noting that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.").

Second, Dr. Smith's opinions memorialized on the physical capacities form stand in contrast to his own treatment notes and conservative treatment regimen for Glover's physical conditions. R. 1569–95.  Dr. Smith works at Women's Health Partners LLC and appears to be Glover's gynecologist. R. 1569–95.  None of the records from Women's Health Partners support the extreme limitations set out in the medical source statement.  Notably, the record does not reflect that Dr. Smith

examined or treated Glover for any musculoskeletal or joint pain. R. 1569–95. Instead, he treated her for pelvic pain and performed a hysterectomy. R. 1569–95. He prescribed medication and physical therapy (R. 1572, 1577, 1581), which Glover reported "worked very well." R. 1574.

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Glover's medical evidence and did not err in finding Dr. Smith's opinion less persuasive.  The ALJ clearly articulated his reasons for finding the opinion not well supported and inconsistent with the medical records.  The court finds that substantial evidence supported this decision, particularly considering the limited probative value of Dr. Smith's form-report opinions.

### 2.    Dr. Khusro

Glover also highlights Dr. Khusro's opinion as detailed on a mental health source statement dated August 9, 2019. R. 1464.  This mental health statement is a one-page, pre-printed form and asks the person completing it to circle "yes or no" to the following questions:

- Can Ms. Glover understand, remember or carry out very short and simple instructions?
- Can Ms. Glover maintain attention, concentration and/or pace for periods of at least two hours?
- Can Ms. Glover perform activities within a schedule and be punctual within customary tolerances?
- Can Ms. Glover maintain an ordinary routine without special supervision?
- Can Ms. Glover adjust to routine and infrequent work changes?

- Can Ms. Glover interact with supervisors?
- Can Ms. Glover interact with co-workers?
- Can Ms. Glover maintain socially appropriate behavior and adhere to basis standards of neatness and cleanliness?

R. 1464.  Dr. Khusro circled "no" to every question except to the first and fifth questions. R. 1464.  She did not circle either "yes or no" to whether Glover could interact with supervisors and co-workers, but noted "depends on nature of interaction" as to supervisor interaction and "to a limited extent" with as to co-worker interaction. R. 1464.  The form also states that Glover would be off-task 50% or more of the time during an eight-hour day and that she would miss more than 20 days of work in a 30-day period due to psychological symptoms. R. 1464.  When asked if the limitations existed back to July 17, 2017, Khusro circled "yes" and stated that Glover's symptoms of severe depression and severe anxiety are not well controlled by medication at this time. R. 1464.

Substantial evidence supports the ALJ's decision to find Dr. Khusro's opinion to be less persuasive. R. 32–33.  Like the physical capacities form, the mental health source statement provides no substantive explanation for any of the opinions stated. Dr. Khusro's checked boxes, circled responses, and limited answers provide no meaningful support for her opinions. R. 1464.  The medical source statement thus has limited probative value. *See Wilkerson ex rel. R.S.*, 2012 WL 2924023, at *3; *Mason*, 994 F.2d at 1065; *Foster*, 410 F. App'x at 833; *Hammersley*, 2009 WL 3053707, at *6.

Additionally, Dr. Khusro's opinion is inconsistent with her own course of mental health treatment for Glover.  There is no evidence in her treatment notes of any substantial limitation in mental functioning and all objective observations generally were within normal limits. R. 1449–53, 1606–09.   Even Glover's subjective statements regarding her symptoms do not support the extreme limitations opined by Dr. Khusro.  In fact, on her visit two days before Dr. Khusro completed the mental health statement, Glover reported that she "was doing better and . . . her medication does help her." R. 1607.  Simply put, there is nothing in the treatment records to support Dr. Khusro's restrictive mental limitations and it is unlikely such extreme limitations would go without observation.

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Glover's medical evidence and did not err in finding Dr. Khusro's opinion to be less persuasive.  The ALJ clearly articulated his reasons for finding the opinion not well supported and inconsistent with the medical records.  The court finds that substantial evidence supported this decision, particularly considering the limited probative value of Dr. Khusro's form-report opinions.

## B.    Past Relevant Work

Glover next argues that the ALJ's finding that she can perform her past work is not supported by substantial evidence and not consistent with the proper legal standards. Doc. 6 at 24–27.  More specifically, Glover contends that the ALJ did not

adequately develop the record as to the physical requirements of her past work. Doc. 6 at 24–27. The Commissioner contends that the ALJ adequately considered King's prior work history, including the VE's testimony and the Department of Labor's Dictionary of Occupational Titles ("DOT"), and that substantial evidence supports the ALJ's determination that Glover could perform her past relevant work. Doc. 9 at 10–13. The court agrees with the Commissioner for the following reasons.

"The ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). Where "there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered," the ALJ "cannot properly determine" the nature of the claimant's past work or appropriately decide whether the claimant remains able to perform that work given his current limitations. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). The Eleventh Circuit has remanded for further inquiry, for example, where the record contained "no evidence concerning whether [the claimant] used equipment, the size and weight of items she was required to use, whether she scrubbed floors or merely dusted, or whether she was required to move furniture" in her previous employment. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986).

Here, the record contains sufficient evidence of the demands of Glover's past work as a parts inspector, quality control manager, and nursing home assistant.

Specifically, Glover completed a "Work History Report" during her application. R. 248–55.  For each former job, the form instructed her to answer a series of questions, including, but not limited to:

- Describe this job. What did you do all day?
- In this job, how many total hours each day did you: Walk? Stand? Sit? Climb? Stoop? (Bend down and forward at waist) Kneel? (Bend legs to rest on knees) Crouch? (Bend legs & back down & forward) Crawl? (Move on hands & knees) Handle, grab or grasp big objects? Reach? Write, type or handle small objects?
- Explain what you lifted, how far you carried it, and how often you did this.

R. 249–54.  The form also asked Glover to indicate for each job the "heaviest weight lifted" and the weight most "frequently lifted . . . from 1/3 to 2/3 of the workday." R. 249–54.

When describing her parts inspector position, Glover answered these questions indicating, for instance, that she walked for one hour, stood for eight hours, and sat for 30 minutes each day. R. 254.  She did not have to climb, kneel, or crawl, but she did have to stoop and crouch for eight hours per day. R. 254.  She also responded that she handled, grabbed, or grasped big objects for eight hours per day; reached for eight hours per day; and wrote, type, or handled small items for eight hours. R. 254.  Glover stated that she "had to carry and left bins to finish goods." R. 254.  Although she indicated that the heaviest weight she lifted was 20 pounds, she also stated that she frequently lifted 25 pounds. R. 254.

At the hearing, the ALJ questioned Glover about her past work.  Glover testified about her work as a parts inspector, quality control manager, and nursing home assistant, and answered questions about her duties and lifting requirements in each position. R. 118–21.  Additionally, the ALJ asked the vocational expert ("VE") to identify Glover's past relevant work. R. 134.  The VE listed Glover's past work as parts inspector, certified nurses' assistant, and quality control supervisor. R. 134. The VE described the parts inspector job as "a light job, performed at light," the certified nurse's assistant as a "medium exertional level, performed at heavy," and the quality control supervisor job as "medium exertional level, performed at medium." R. 134.  With all three descriptions, the VE referred the ALJ to the listing for the job in the DOT. R. 134; *see* 20 C.F.R. § 416.960(b)(2) (stating that an ALJ may consult a "vocational expert" and the "Dictionary of Occupational Titles" at Step Four).  The DOT contains detailed descriptions of the duties and physical requirements associated with each occupation as they are generally performed in the economy.

On a record similar to this one, the Eleventh Circuit observed that "[t]he Work History Report, testimony of [claimant] and the vocational expert, and the DOT combine to paint a full picture of [claimant]'s past relevant work" in holding that this evidence is sufficient for a comparison of the claimant's current abilities to the demands of her previous employment. *Holder v. Soc. Sec. Admin*., 771 F. App'x

896, 900 (11th Cir. 2019).   With a similar record here, the court arrives at the same

conclusion.  The court therefore finds that the ALJ's determination is supported by

substantial evidence and Glover is not entitled to any relief based on this argument.[6]

## C.    Appeals Council

Glover argues that the Appeals Council erred in refusing to consider the

additional evidence. Doc. 13 at 20–25.  Glover submitted five pieces of additional

evidence to the Appeals Council: (1) September 12, 2009 to January 2, 2020 records

from the Neurology Center of Gadsden; (2) August 29, 2019 to September 4, 2019

records from Northeast Orthopedics; (3) September 4, 2019 to January 15, 2020

records from Dr. Huma Khusro; (4) September 5, 2018 to February 11, 2020 records

from Doctors Care; and (5) a June 5, 2020 independent medical evaluation and

physical capacities form from Dr. Jarrod Warren. R. 2, 57–112.   The Appeals

Council found the first four sets of records did not show a reasonable probability of

changing the outcome of the ALJ's decision and that Dr. Warren's records were

chronologically irrelevant. R. 2.

---

[6]Alternatively, the court finds that any failure by the ALJ to specifically address Glover's relevant work history is harmless and not a cause for reversal or remand for the reasons stated above.  There was ample evidence in the record relating to Glover's past work history and the demands of her positions. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not have an impact on the step being challenged); *Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination); *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

The court first finds that Glover abandoned her arguments related to the Appeals Council decision.  "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted).  A recent panel of the Eleventh Circuit, in an unpublished opinion, applied *Singh* in finding that the plaintiff abandoned an issue on appeal "because her initial brief simply mentions the issue without providing any supporting argument." *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing *Singh*, 561 F.3d at 1278–79); *see also Bailey v. Soc. Sec. Admin., Comm'r*, 2019 WL 5787955, at *1 n.1 (11th Cir. Nov. 6, 2019) (declining to address one of the plaintiff's arguments because she raised it "'in a perfunctory manner without supporting arguments'") (quoting *Sapuppo v. Allstate Fla. Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014)); *Morgan v. Soc. Sec. Admin., Comm'r*, 2019 WL 1466259 (N.D. Ala. Apr. 3, 2019) (finding plaintiff abandoned her argument that the ALJ improperly considered her fibromyalgia where she identified no specific error with the ALJ's consideration of her fibromyalgia and did not explain why she believed the ALJ's evaluation of her fibromyalgia ran afoul of SSR 12-2p).

In the section of her brief dedicated to the decision of the Appeals Council, Glover provides no argument or citation to the record relating the first four groups of medical evidence, but instead merely directs the court to her summary of the records. Doc. 6 at 27–29.  She does not identify the relevant portions of the medical evidence which show a "reasonable probability"[7] of changing the outcome of the ALJ's decision.  The pages dedicated to this argument consist of a block quotation from the Appeals Council decision and general principles of law governing the Appeals Council's consideration of new evidence, but Glover stops short of explaining how the Appeals Council erred. Doc. 6 at 27–28.  In fact, the brief does not provide any substantive analysis on this issue.  This sort of perfunctory argument gives neither the Commissioner nor the court any guidance on Glover's argument aside from the fact that she asserts error.  For these reasons, the court finds that Glover has abandoned this issue. *See Singh*, 561 F.3d at 1278 (holding that an "appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue"); *Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons

---

[7] Glover seems to contend that the Appeals Council incorrectly applied a "reasonable probability" standard instead of a "reasonable possibility" standard in denying her request for review. Doc. 6 at 28.  This argument is misplaced.  Under the pertinent regulations, when a claimant presents evidence after the ALJ's decision, the Appeals Council must consider whether "there is a reasonable probability that the additional evidence would change the outcome of the decision." *See* 20 C.F.R. § 404.970(a)(5); *see also Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315 (11th Cir. 2021) (rejecting the same argument made by the same counsel).

a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.")

The same can be said of Glover's argument regarding the Appeals Council's consideration of the documents from Dr. Warren. Doc. 6 at 28–29. Again, Glover does not provide any argument identifying the specific error or citation to the record. Instead, in the half-page dedicated to this argument, Glover's brief excerpts the Appeals Council's decision and mentions one case for a general principle of law. Doc. 6 at 28–29. There is absolutely no application of this law or these decisions to the facts at hand, and therefore Glover has abandoned this issue. *See Singh*, 561 F.3d at 1278; *Sapuppo*, 739 F.3d at 681.

## V.  CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Therefore, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on January 26, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE